# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KENNEDY BOST, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-12-2544 |
| DETECTIVE PATRICIA BRADDS, | * |
| Defendant. | * |

******

## MEMORANDUM

Plaintiff Kennedy Bost ("Plaintiff") filed this action against Defendant Detective Patricia Bradds of the Baltimore Police Department ("Detective Bradds") on August 24, 2012, alleging that Detective Bradds acted without legal justification or probable cause when filing for a warrant for his arrest.[1] [ECF No. 2]. Detective Bradds has filed a motion for summary judgment ("motion") [ECF No. 36]. I have reviewed the motion, Plaintiff's Opposition [ECF No. 41], and the Reply thereto [ECF No. 42]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Detective Bradds's motion for summary judgment is granted.

**I. Facts**

At approximately 6:00 P.M. on June 24, 2011, Thurman Jennings ("Ms. Jennings") and her friend Da-Shaye Canty ("Ms. Canty") were approached by a group of three men ("the suspects") near the Eutaw Street entrance of Lexington Market.[2] Pl. Compl. ¶¶ 3-8. The suspects asked whether Ms.

---

[1] Plaintiff also named the Office of the State's Attorney, Gregg L. Bernstein, Esq., Sara Gross, Esq., and the Baltimore Police Department as Defendants. [ECF No. 2]. Judge Bredar dismissed the claims against those Defendants on October 3, 2012. [ECF Nos. 16, 17]. By consent of the remaining parties, this case was referred to me for all proceedings. [ECF No. 24].

[2] Jennings is transgendered, and will, in accordance with the description used by her friend, Ms. Canty, be referred to as Ms. Jennings, her, or she.

Jennings is a male or female. Pl. Opp'n, Ex. 10. After being ignored by Ms. Jennings and Ms. Canty, one of the suspects again asked if Ms. Jennings is a male or female. *Id.* Ms. Canty responded by stating, "[l]eave her alone, let her be who she wants to be." *Id.* The suspects then began to surround Ms. Jennings and Ms. Canty. *Id.* Fearing for their safety, Ms. Jennings sprayed mace towards the suspects, also accidentally spraying Ms. Canty. *Id.* A suspect punched Ms. Jennings, and Ms. Canty and Ms. Jennings began fighting with the suspects. *Id.* During the fight, one of the suspects used a sharp object to cut Ms. Jennings's left palm, left forearm, and face. *Id.*

After the altercation, Detective Robert Heath ("Detective Heath") arrived, spoke with Ms. Jennings and Ms. Canty, and prepared an incident report. *Id.* Ms. Jennings was then taken to the hospital for treatment, where one of her lacerations required surgery. Pl. Opp'n, Ex. 1. Ms. Canty was transported to the police department, where she was interviewed by Detective Bradds. Pl. Compl. ¶ 8. Before going on the record, Detective Bradds spoke to Ms. Canty about her recollection of the incident, and took notes to reflect that conversation. *See* Pl. Opp'n, Ex. 2, ("Bradds Dep.") 35:21-36:19. Ms. Canty described suspect one, the primary suspect who assaulted Ms. Jennings, as an African-American man who routinely "hacks"[3] at Lexington Market, and stated that he harassed Ms. Jennings, acted like a bully, and often harassed others. *Id.* at 31:10-22. Ms. Canty also stated that suspect one was wearing a white T-shirt, dark jeans, and no hat. Pl. Mot., Ex. 8.

During the recorded interview, which ended at 8:20 P.M., Ms. Canty indicated that she sees the suspects near Lexington Market "all the time," and that the suspects regularly "hack" in that area. Pl. Opp'n, Ex. 3, at 4. Ms. Canty also described the suspects as "older men." *Id.* at 3. Detective Bradds then stated that she was familiar with some of the hacks at Lexington Market. *Id.* at 4. Based on Ms. Canty's description, Detective Bradds "had a hunch" that Plaintiff might be the assailant. Bradds Dep. 33:10-14. Detective Bradds retrieved a single photo of Plaintiff from the police database, and displayed

---

[3] A "hack" is an illegal taxi.

the image to Ms. Canty. Pl. Mot., Ex. 3, at 4. Ms. Canty stated that the picture portrayed "the one that hit [Ms. Jennings]." *Id.*

After receiving Ms. Canty's positive identification, Detective Bradds went to the hospital to speak with Ms. Jennings about the incident. *See* Bradds Dep. 20:12-21:17; 60:18-21. At around 9:50 P.M., Detective Bradds presented Ms. Jennings with a photo array containing a photograph of Plaintiff and five photographs of other men with similar physical characteristics. *See* Pl. Mot., Ex. 7. After viewing the array, Ms. Jennings positively identified Plaintiff as one of the men involved in the assault. *Id.*

To further the investigation, Detective Bradds also reviewed the surveillance video of the assault "at least once." *See* Bradds Dep. 48:13-17. Detective Bradds testified that she used the video as an investigative tool "to be able to tell that an incident occurred where the victim said that it did occur." *Id.* Detective Bradds also testified that the video was "not clear enough to be able to see," *id.*, and that she could not identify anyone from the video. *Id.* at 48:19, 52:11-15.

Following the positive identifications of Plaintiff from both Ms. Canty and Ms. Jennings, Detective Bradds prepared an Application for Statement of Charges for Plaintiff's arrest. Pl. Opp'n, Ex. 1. In her sworn statement on the Application for Statement of Charges ("Application"), Detective Bradds stated, "[t]his Detective responded to City Watch and saw the video. *Id.* The suspect could be seen repeatedly punching the victim." *Id.* The Application does not mention Ms. Jennings's or Ms. Canty's positive identification, or Detective Bradds's prior experience with Plaintiff.[4] *See id.* However, Detective Bradds testified that the Application was based on what she was told by Ms. Jennings, not the video. Bradds Dep. 99:10-100:1.

---

[4] Detective Bradds had previously investigated another incident at Lexington Market, in February 2011, where Plaintiff was stabbed by another man. Def. Mot., Ex. D ("Bost Dep.") 19:11-21.

3

Plaintiff was charged with Attempt to Commit Murder in the Second Degree, Assault in the First Degree, Assault in the Second Degree, Reckless Endangerment, Dangerous Weapon, and Harassment of a Person based upon Race or Religion. Pl. Compl. ¶ 13. Plaintiff was arrested on July 9, 2011, and ordered to be held without bond. *Id.* at ¶ 14. On October 14, 2011, Plaintiff filed a writ of habeas corpus asking the Court to review the surveillance video, which he alleged would exonerate him, or to reduce his bail. *Id.* at ¶ 18. Despite filing that motion, Plaintiff remained in jail until January 17, 2012, when Assistant State's Attorney Sara Gross entered a *nolle prosequi* on all charges. *Id.* at ¶ 24-25.

On June 24, 2012, Plaintiff filed a Complaint alleging seven counts: Battery (Count I); False Arrest (Count II); False Imprisonment (Count III); Malicious Prosecution (Count IV); Violations of Articles 24, 25, and 26 of the Maryland Declaration of Rights (Count V); Conspiracy (Count VI); and Violation of 42 U.S.C. § 1983 (Count VII). Detective Bradds has filed a Motion for Summary Judgment on all counts.

**II. Legal Standard**

A motion for summary judgment is granted under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). Summary judgment is precluded only when there are disputes over the facts that might affect the outcome of the proceedings under the applicable law. Factual disputes that are not relevant or not necessary will not be considered in a summary judgment motion. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of showing that there is no evidence to support the non-moving party's case, and must only show an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In response, the non-moving party must show that there is a genuine issue for trial. A court must decide whether there is a genuine issue for trial, "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 242-43.

**III. Analysis**

Each of Plaintiff's Counts is addressed in detail below.

   *A. State Law Claims*

Plaintiff has brought several state law claims, including battery, false arrest, false imprisonment, and malicious prosecution. The outcome of Detective Bradds's motion on these counts hinges on whether Detective Bradds had probable cause to arrest Plaintiff.

   *i. Battery, False Arrest, False Imprisonment*

First, Detective Bradds argues that summary judgment is appropriate on Plaintiff's false arrest, false imprisonment, and battery claims. Under Maryland law, "[t]he elements of false imprisonment are the same as the elements for false arrest." *Green v. Brooks*, 725 A.2d 596, 605 (Md. Ct. Spec. App. 1999). To prevail on a claim of false imprisonment or false arrest, "the plaintiff must prove that the defendant deprived him or her of his or her liberty without consent and without legal justification." *Id.* Detective Bradds argues that she is entitled to summary judgment because her actions were legally justified. She is correct.

An arrest may be legally justified if it is "made under a warrant which appears on its face to be legal," or without a warrant if the officer "has probable cause to believe that a felony has been committed, and that the arrestee perpetrated the offense."[5] *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995); *see Beasley v. Kelly*, Civil Action No. DKC 10-0049, 2011 WL 4711910, at *6 (D. Md. Oct. 4,

---

[5] There is no dispute over whether the suspected crime committed was a felony. In Maryland, felony assault is defined as "intentionally caus[ing] or attempt[ing] to cause serious physical injury to another." Maryland Code, Criminal Law Article, § 3-202. Officer Heath listed "Aggravated Assault by cutting" in his report, and noted that one of the suspects used a sharp object to cut Ms. Jennings's arm, hand, and face. Pl. Opp'n, Ex. 10. Ms. Jennings was taken to the hospital because she needed surgery to repair one of the lacerations obtained in the altercation. This certainly classifies as probable cause to believe that the suspects intentionally caused or attempted to cause serious physical injury to another. *See Williams v. State*, 641 A.2d 990, 992 (Md. Ct. Spec. App. 1994) (finding that stabbing an individual in the neck or lower face, and then again in the chest-shoulder area, was an act creating a substantial risk of death or serious physical injury); *State v. Stanley*, 720 A.2d 323, 332 n.10 (Md. 1998) (noting that "[w]hen a person stabs another, it is reasonable to infer that permanent disablement or disfigurement is intended.").

5

2011). In his Opposition, Plaintiff notes that Detective Bradds failed to include critical information in her Application. Pl. Opp'n 4. Detective Bradds's Application stated that she "responded to City Watch and saw the video," and that "[t]he suspect could be seen repeatedly punching the victim." *Id.* However, Detective Bradds conceded at her deposition that the City Watch video was "not clear enough to be able to see," and that she could not identify anyone from the video. Bradds Dep. 48:13-19, 52:11-15. In addition, Detective Bradds's Application did not mention her prior experience with Plaintiff at Lexington Market, Ms. Canty's identification of Plaintiff in a one-photo show-up, or Ms. Jennings's identification of Plaintiff in a six-photo array, *see* Pl. Opp'n, Ex. 1, all of which led her to believe that Plaintiff committed the crime.

Even crediting Plaintiff's argument that the Application and resulting warrant were invalid, an arrest is valid if the officer had "adequate knowledge independent of the warrant to constitute probable cause." *See United States v. White*, 342 F.2d 379, 382-83 (4th Cir. 1965); *see United States v. Wiggins*, Criminal No. WDQ-09-0287, 2011 WL 806383, at *6 (D. Md. Mar. 1, 2011) (noting that "an insufficient warrant does not invalidate an arrest if probable cause exists."). Probable cause exists if, "at the moment the arrest was made[,] . . . the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the suspect committed the crime. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Probable cause is "assessed by considering the totality of the circumstances in a given situation," and is determined based on probabilities, not certainties. *State v. Cabral*, 859 A.2d 285, 296, 300 (Md. Ct. Spec. App. 2004); *see United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). When making a probable cause determination in this context, the court must "[v]iew[] the record and draw[] all reasonable inferences in the light most favorable to [the non-moving party], while simultaneously viewing the facts from the perspective of a reasonable officer." *Royster v. Nichols*, 698 F.3d 681, 688 (8th Cir. 2012).

6

At the time of arrest, Detective Bradds knew that Detective Heath had interviewed Ms. Jennings at the time of the incident, and that she had described her assaulter as an African-American male in his fifties, who had short hair, and wore jeans and a blue shirt with white writing. Pl. Opp'n, Ex. 10. Detective Bradds also knew that Ms. Jennings had positively identified Plaintiff when presented with a photo array. Further, Detective Bradds had watched the surveillance video confirming the occurrence of the incident. Based on those facts, Detective Bradds had probable cause to arrest Plaintiff. In fact, the untainted positive identification from Ms. Jennings alone constituted probable cause.[6] *See Tangwall v. Stuckey*, 135 F.3d 510, 520 (7th Cir. 1998) (stating that "the law is clear that a believable victim's single identification can provide the basis for probable cause."); *Virgil v. Town of Gates*, 455 Fed. Appx. 36, 38 (2d Cir. 2012) ("A victim's identification of an assailant is, by itself, sufficient probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); *see also McRae v. State*, 239 A.2d 607, 609 (Md. Ct. Spec. App. 1968) (stating that "sufficient probable cause for an arrest exists where there is a report of a felony and a description of the perpetrator.").

Plaintiff argues that despite Ms. Jennings's positive identification, Detective Bradds did not have probable cause because she knew, by viewing the City Watch video, that Plaintiff was not the assailant. Moreover, Plaintiff submits that the dispute regarding the exculpatory value of the video creates a genuine dispute of material fact. Pl. Opp'n 9-10, 14. Those arguments lack merit.

---

[6] Plaintiff mentions that his photo in the six-photo array was the only photograph showing a person wearing a dark shirt with something on the shoulders. Pl. Opp'n 3, 14. There is no evidence that Ms. Jennings selected Plaintiff due to his shirt color, or that the assaulter's shirt had any markings on the shoulders. Plaintiff also alludes to the possibility that Ms. Jennings spoke to Ms. Canty prior to Ms. Jennings's positive identification. Although Ms. Canty may have had her cell phone at the police station, there is no evidence that she spoke with Ms. Jennings prior to Ms. Jennings's identification of Plaintiff. "Unsupported speculation is insufficient to defeat a motion for summary judgment." *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 278 (D. Md. 1992).

7

Once probable cause is established, an officer may make an arrest unless she is aware of additional "plainly exculpatory" evidence. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). "For example, an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime, but the officer may not arrest the suspect if, in addition, the officer is aware of DNA evidence and a videotaped account of the crime that *conclusively establish* the suspect's innocence." *Id.* (emphasis added) (internal citations omitted). However, a reasonable officer need not "exhaust every *potentially exculpatory* lead or resolve every doubt about a suspect's guilt before probable cause is established."[7] *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) (emphasis added). Therefore, the issue is whether a reasonable officer viewing this video could have believed that it was plainly exculpatory evidence.

Plaintiff alleges that the "video is clear," and the suspect "is clearly not" him. *See* Pl. Opp'n 14. Although Plaintiff's rendition of the facts would typically be accepted on summary judgment, the court need not accept the non-movant's version of the facts if video evidence clearly contradicts its assertions. *See Scott v. Harris*, 550 U.S. 372, 378-79 (2007). Of course, "*Scott* does not license a court to reject one side's account as a matter of law if the documentary evidence, such as a video, merely offers some support for the other side's version of events." *Sawyer v. Asbury*, No. 12-2123, 2013 WL 4056186, at *7 (4th Cir. Aug. 13, 2013) (internal quotations omitted) (citing *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011) (holding that the dashboard video "did not compel adoption of the [officers'] version of the facts and rejection of Witt's" because it provided "little assistance in resolving the parties' disputes as to the facts.")). Unlike the video in *Witt*, the video here resolves the parties' limited dispute as to whether Detective Bradds had knowledge of "plainly exculpatory" evidence when she arrested Plaintiff. She did not.

---

[7] This is consistent with Maryland law, in that probable cause is determined based on probabilities, not certainties. *See State v. Cabral*, 859 A.2d 285, 296, 300 (Md. Ct. Spec. App. 2004).

The suspects in the video are African-American males who appear to be of middle age, average height, and average-to-below-average build. *See* Pl. Opp'n., Ex. 9. The video evidence, therefore, generally matches the description of the suspects in Officer Heath's report from his eyewitness interviews. *See* Pl. Opp'n, Ex. 10 (describing the suspect as an African-American male in his fifties). The video evidence also shows that the suspects' descriptions generally match that of Plaintiff, as documented by his "Wanted" poster. *See* Pl. Opp'n, Ex. 7 (showing that Plaintiff is an African-American male who weighs 170 pounds, and is 5'7" tall). The City Watch camera was located at a significant distance away from the altercation, was partially obstructed by a tree, street light, and lamp post, and did not capture a clear or sustained image of the suspects during the incident, which lasts approximately twenty seconds.[8] *See* Pl. Opp'n, Ex. 9. Therefore, a reasonable officer viewing the video could not have considered the video to be plainly exculpatory of Plaintiff. If the suspects in the City Watch video had been 7'0" tall African-American females, or white males of below average height, a reasonable officer could conclude that the video was plainly exculpatory. *See Kuehl*, 173 F.3d at 650; *see also Garrett v. City of New York*, No. 10 Civ. 2689(JGK), 2011 WL 4444514, at *3 (S.D.N.Y. Sept. 26, 2011) (ruling that probable cause existed based on the identification of the plaintiff by the victim, despite the fact that the parties disputed "the exculpatory value of [a] video" which captured the incident). However, a reasonable officer viewing the imprecise video evidence in this case could not find that it conclusively establishes whether or not Plaintiff was one of the depicted suspects. That analysis comports with the testimony of both Detective Bradds and the Assistant State's Attorney that

---

[8] Even if certain "still shots" from the video could suggest that the suspect in the plaid shirt was not Plaintiff, there is no evidence that Detective Bradds viewed any still shots in her investigation. Her testimony is only that she watched the video "at least once." Bradds Dep. 47:10-12. Moreover, the handwritten statement by Ms. Jennings in connection with the photo array identification states that Mr. Bost told her she "would die out here," swung at her, and "continued to throw punches." Def. Mot., Ex. E. The video shows at least two suspects, one in a plaid shirt and one in a blue jersey, punching and/or kicking Ms. Jennings. Because of the obstructed vantage point, it is possible that other suspects punched Ms. Jennings as well.

9

the video of this assault was not clear enough to permit identification. *See* Bradds Dep. 48:13-19, 52:11-15; Def. Mot. Ex. F ("Gross Dep.") 21:8-12 (noting that the video "was slightly blurry," and that she "couldn't make out facial features or things of that nature."). Therefore, the video cannot negate the finding of probable cause based on Ms. Jennings's untainted positive identification.[9]

Plaintiff argues that Ms. Jennings's veracity should have been questioned for several additional reasons. Plaintiff first argues that the City Watch video clearly shows "the primary suspect" wearing plaid, and that Ms. Jennings's and Ms. Canty's description of the suspects did not include a man wearing plaid. Pl. Opp'n 12. However, other than the clothing, Officer Heath's report of the eyewitness statements generally matches the event as displayed on the City Watch video. *See* Pl. Opp'n, Exs. 9, 10. There is also no indication that Ms. Jennings had any difficulty identifying Plaintiff when viewing the photo array. Moreover, Detective Bradds believed, based on the information presented to her by Ms. Canty, independent of Ms. Jennings's identification, that Plaintiff was an assailant. Bradds Dep. 33:10-14. Under these circumstances, a discrepancy between the clothing seen on the video and Ms. Jennings's description is minor, and does not eliminate probable cause. *See Tangwall*, 135 F.3d at 516 (holding that probable cause existed despite the disparities between the victim's initial description of the suspect and the suspect's appearance on the night of his arrest); *Lallemand v. Univ. of Rhode Island*, 9 F.3d 214, 216 (1st Cir. 1993) (holding that probable cause existed even though the victim originally stated that the perpetrator was 6'0" tall with feathered-brown hair, was named Dan, and lived in her dormitory, when the perpetrator who was later positively identified by the victim was not named Dan, was 6'7" tall, and neither lived in her dormitory nor had feathered-brown hair).

---

[9] Plaintiff urges that Detective Bradds's Application be read to suggest that she could identify Plaintiff by watching the video, *see* Pl. Opp'n, Ex. 1, which is contradicted by her deposition testimony. However, the Application could also be read to suggest simply that the video depicted an unidentified suspect repeatedly punching Ms. Jennings. Under either scenario, the video evidence cannot be considered plainly exculpatory. Moreover, Plaintiff has not provided any sworn testimony or other evidence proving that any witness deemed the City Watch video clear enough to plainly exculpate Plaintiff.

Plaintiff next argues that Ms. Canty's physical descriptions of the suspects were erroneous. However, a victim's identification of their attacker "establishes probable cause to make an arrest, even where other witnesses' descriptions of the alleged perpetrator differ from the physical appearance of the individual so identified." *Tangwall*, 135 F.3d at 516. Plaintiff also complains that Detective Bradds may not have investigated physical evidence at the scene of the altercation. Pl. Opp'n 12. However, as noted above, a reasonable officer need not "exhaust every *potentially exculpatory* lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky*, 942 F.2d at 264 (emphasis added). Detective Bradds had probable cause to arrest Plaintiff when Ms. Jennings positively identified him in a six-photo array. Once she possessed this positive identification, Detective Bradds was not required to investigate every potentially exculpatory lead. Therefore, Detective Bradds's motion for summary judgment on Plaintiff's false arrest and false imprisonment claims is granted.

Detective Bradds is also entitled to summary judgment on Plaintiff's battery claim. Plaintiff alleges that Detective Bradds "battered Plaintiff by unlawfully ordering the arrest and detention of Plaintiff," and that "[s]aid arrest was an intentional, non-consensual, harmful or offensive touching of Plaintiff." Pl. Compl. ¶ 33. Therefore, Plaintiff's battery claim is dependent on the merits of his false arrest and false imprisonment claims. If the arrest constituted a false imprisonment or false arrest, the physical force used to effectuate the arrest would give rise to a cause of action for battery. *Ashton*, 660 A.2d at 471. However, "if the arrests themselves were not tortious, neither was the physical force used to effectuate them." *Id.* Because the arrest of Plaintiff was not tortious, Detective Bradds's motion for summary judgment on Plaintiff's battery claim must also be granted. *Id.*; *see also Williams v. Prince George's Cnty.*, 685 A.2d 884, 898 (Md. Ct. Spec. App. 1996) (stating that "false imprisonment, false arrest, and assault and battery . . . can only occur when there is no legal authority or justification for the arresting officer's actions.").

### ii. Malicious Prosecution

Detective Bradds argues that summary judgment should be granted on Plaintiff's malicious prosecution claim because Plaintiff cannot produce any credible evidence that suggests that she acted with malice or without probable cause. To prove malicious prosecution, a plaintiff must establish each of the following elements: "(1) a criminal proceeding instituted or continued by the defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceedings in favor of the plaintiff." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). As explained above, Detective Bradds had probable cause to arrest Plaintiff, which negates the second required element. Therefore, even if Detective Bradds acted with malice, Detective Bradds's motion for summary judgment on Plaintiff's malicious prosecution claim must be granted.[10]

### iii. Conspiracy

Under Maryland law, to prove civil conspiracy, "[t]he plaintiff must prove an unlawful agreement, the commission of an overt act in furtherance of the agreement, and that as a result, the plaintiff suffered actual injury." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006). For a civil conspiracy claim to survive summary judgment, the plaintiff must provide some evidence to suggest an agreement to engage in unlawful activity. *Elecs. Store, Inc. v. Cellco P'ship*, 732 A.2d 980, 993-94 (Md. Ct. Spec. App. 1999) (affirming grant of summary judgment to defendant on a civil conspiracy claim because plaintiff failed to provide any evidence of an agreement between the alleged conspirators).

---

[10] A favorable outcome, such as a *nolle prosequi*, does not equate to a lack of probable cause. Courts look to the "circumstances surrounding the State's decision so as to determine whether there was an absence of probable cause." *Hines v. French*, 852 A.2d 1047, 1058 (Md. Ct. Spec. App. 2004). Here, Assistant State's Attorney Sara Gross testified that the State decided not to prosecute Plaintiff largely because Ms. Canty moved to Florida and refused to come back, and because Ms. Jennings had failed to appear many times, making prosecution of the case challenging. Gross Dep. 8:20-12:4. The decision to enter a *nolle prosequi*, therefore, was not due to an established lack of probable cause.

Plaintiff alleges in his Complaint that, "Defendants conspired among each other to commit the unlawful tortious acts previously set forth in this complaint." Pl. Compl. ¶ 56. However, Plaintiff has not offered any evidence of an agreement between Detective Bradds and any other person that would substantiate a claim of civil conspiracy. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to even withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, Plaintiff has not responded to any of Detective Bradds's arguments regarding the merits of his conspiracy claim. Failure to address defendant's arguments for summary judgment in an opposition brief is itself sufficient grounds to grant the defendant's motion. *See Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of the claim). For those reasons, summary judgment is granted on Plaintiff's conspiracy claim.

### B. State law claims based on Maryland's Declaration of Rights

Detective Bradds next asserts that summary judgment is warranted as to Plaintiff's state law constitutional claims. Plaintiff alleges that Detective Bradds's actions violated Maryland's Declaration of Rights, including Articles 24, 25, and 26. Each claim is addressed below.

#### i. Article 24

Plaintiff vaguely alleges that Detective Bradds deprived him of his rights under Article 24 of the Maryland Declaration of Rights. Pl. Compl. ¶ 52. Article 24 of the Maryland Declaration of Rights is largely equivalent to the Fourteenth Amendment's Due Process Clause, and they are therefore interpreted *in pari materia*. *See Barnes v. Montgomery Cnty., Md.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011). Plaintiff merely states that "Defendants' aforesaid conduct violated Plaintiff's rights protected by Md. Const. Declaration of Rights . . . Due Process, Art. 25 – Excessive Bail and Fines; Cruel and Unusual Punishment." *Id.* Plaintiff's only substantive argument regarding his due process claim states

that Detective Bradds's actions, "which caused [Plaintiff's] incarceration[,] do shock the conscience in these circumstances and certainly worsened his legal plight." Pl. Opp'n 7.

Plaintiff's Article 24 claim fails for several reasons. First, Plaintiff has failed to explain which actions taken by Detective Bradds violate his due process rights, or how such actions shock the conscience. "Once a case has advanced to the summary judgment stage, such allegations no longer suffice and plaintiffs are required, under Federal Rule of Civil Procedure 56(e), to set out by affidavit or other evidence specific facts in support of their assertions." *Id.* (internal quotations omitted). Because Plaintiff has failed to specify which facts support his due process claim, Detective Bradds's motion for summary judgment must be granted.

Second, even if this Court could reach the merits of Plaintiff's vague due process claim, it must fail because it is focused on "Bradds's actions which caused [Plaintiff's] incarceration." Pl. Opp'n 7. Plaintiff is clearly focusing on Detective Bradds's actions prior to incarceration, which, logically, can translate only to a complaint that he was arrested without probable cause. However, "an individual alleging that he was prosecuted in the absence of probable cause states no substantive due process claim." *Wilkes v. Young*, 28 F.3d 1362, 1364 n.4 (4th Cir. 1994); *see Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) (holding that "the Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial."). Therefore, to the extent Plaintiff's due process claim is premised on Detective Bradds's Application and arrest, it properly analyzed under Article 26, which corresponds to the Fourth Amendment.

In addition, the parties dispute whether Detective Bradds's actions "shock the conscience." Def. Mot. 27; Pl. Opp'n 7 (arguing that a jury could find that Detective Bradds's actions "shock the conscience."). Assuming *arguendo* that this is the proper standard, Plaintiff's claim would still fail.

14

Official conduct "shocks the conscience" if it is "intended to injure in some way unjustifiable by any government interest." *Slaughter v. Mayor & City Council of Balt.*, 682 F.3d 317, 321 (4th Cir. 2012). When pretrial detainees are involved, a lower level of culpability may amount to a substantive due process violation, requiring plaintiffs to demonstrate "deliberate indifference." *See id.* To determine whether conduct "shocks the conscience," courts look to the "totality of facts in a given case." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). Planitiff's claim fails because he has provided no evidence that Detective Bradds's conduct shocks the conscience. Although Detective Bradds's pre-arrest actions could be viewed as sloppy police work, particularly as to the unclear wording of the Application and the use of a single photograph with an eyewitness, they do not shock the conscience because Detective Bradds in fact had probable cause to arrest Plaintiff. *See Johnson v. Maryland*, Civil Action No. AW-09-2594, 2010 WL 1980094, at *6 (D. Md. May 13, 2010) (finding that officer's actions did not even amount to gross negligence because the officer had sufficient probable cause to arrest the plaintiff).

Further, Plaintiff has not alleged sufficient facts to find that Detective Bradds's post-arrest actions shock the conscience. There is no evidence that Detective Bradds learned of any additional exculpatory facts while Plaintiff was incarcerated, or that Detective Bradds was part of any decision to continue to incarcerate Plaintiff. In fact, the only evidence put forth by Plaintiff regarding Detective Bradds's post-arrest actions indicates that Detective Bradds forwarded Plaintiff's letter, protesting his innocence, to the Assistant State's Attorney. Bradds Dep. 98:17-100:22. She did so according to protocol. *Id.* In addition, Detective Bradds testified that she did not further investigate Plaintiff's case because her investigation is directed by the State's Attorney's Office, and that office never directed her to take further action. *Id.* Moreover, she testified that she had no influence on the case after her initial investigation. *Id.* Based on those facts, Detective Bradds's post-arrest actions cannot be viewed as

15

conscience-shocking. For all of those reasons, Detective Bradds's motion for summary judgment on Plaintiff's Article 24 claim is granted.[11]

    *ii. Article 25*

Detective Bradds next argues that summary judgment should be granted on Plaintiff's Article 25 claim. Specifically, Detective Bradds argues that Article 25 scrutiny is inappropriate for allegations regarding conduct prior to a formal adjudication of guilt. She is correct.

Article 25 of the Maryland Declaration of Rights states that "excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted, by the Courts of Law." Article 25 is "substantially identical to the Eighth Amendment," *Aravanis v. Somerset Cnty.*, 664 A.2d 888, 893-94 (Md. 1995), and is therefore interpreted *in pari materia* with the Eighth Amendment. *Jones v. State*, 681 A.2d 1190, 1199 n.5 (Md. Ct. Spec. App. 1996). The Supreme Court has held that Eighth Amendment scrutiny is appropriate only after the State "has secured a formal adjudication of guilt in accordance with due process of law." *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 (1983). Because Plaintiff was never found guilty, his Eighth Amendment and Article 25 claim must fail. In addition, Plaintiff's claim fails because he did not respond to Detective Bradds's argument regarding his Article 25 claim. *See Mentch*, 949 F. Supp. at 1247. For these reasons, Detective Bradds's motion for summary judgment is granted as to Plaintiff's Article 25 claim.

    *iii. Article 26*

In his Complaint, Plaintiff alleges that Detective Bradds violated his Article 26 rights. Article 26 in Maryland's Declaration of Rights protects the same rights as the Fourth Amendment to the United

---

[11]Further, if Plaintiff's due process claim is based on a "right not to be deprived of liberty based on false evidence," it also fails because Detective Bradds had probable cause to arrest him. *See Martin v. Conner*, 882 F. Supp. 2d 820, 847 (D. Md. 2012). Plaintiff's claim would also fail if considered under the "punishment" standard. Plaintiff has not alleged sufficient facts to find that his incarceration amounted to punishment, as he has only alleged that he was detained for six months pending trial. *Smith v. Bortner*, 998 A.2d 369, 381 (Md. Ct. Spec. App. 2010) (noting that "once the government has exercised its authority to detain a person pending trial, it is entitled to employ devices that are calculated to effectuate the detention.").

States Constitution, and states that "all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive." Article 26 claims are defeated by a finding that the arresting officer acted with probable cause to arrest the plaintiff. *See Ross v. Early*, 899 F. Supp. 2d 415, 431 (D. Md. 2012); *Strickland v. Carroll Cnty., Md.*, 2012 WL 401075, at *23 (D. Md. Feb. 7, 2012). As explained above, Detective Bradds had probable cause to arrest Plaintiff. Therefore, Detective Bradds's motion for summary judgment on Plaintiff's Article 26 claim is granted.

### C. Federal Constitutional Claims Under § 1983

Detective Bradds next moves for summary judgment on Plaintiff's § 1983 claims. Plaintiff's complaint "incorporates all allegations, including those related to the aforementioned claims of false imprisonment, false arrest, battery, malicious prosecution and intentional infliction of emotional distress under this claim." Pl. Compl. ¶ 61. Plaintiff also states that Detective Bradds's actions "were within the scope of [her] employment and constituted a violation of his rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution." *Id.* at ¶ 62. 42 U.S.C. § 1983 "creates a civil action for the deprivation of rights guaranteed by the Constitution by persons acting under color of state law." *Gray v. Maryland*, 228 F. Supp. 2d 628, 636 (D. Md. 2002). Plaintiff's Section 1983 claims are deficient for several reasons.[12]

First, this Court has already concluded that Detective Bradds had probable cause to arrest Plaintiff, and has therefore dismissed Plaintiff's Article 26 claims. Because Article 26 and the Fourth Amendment are construed *in pari materia*, Plaintiff's Section 1983 claim based on the Fourth Amendment also fails. In addition, even if this Court could read Plaintiff's complaint as alleging

---

[12] To the extent that Plaintiff has alleged a Section 1983 claim based on intentional infliction of emotional distress ("IIED") or battery, those claims fail because Plaintiff has not responded to Detective Bradds's argument regarding those claims. *See Mentch*, 949 F. Supp. at 1247. Plaintiff's IIED-based Section 1983 claim also fails because he has not alleged that Detective Bradds's conduct was extreme or outrageous, and Plaintiff's battery-based Section 1983 claim also fails because Plaintiff cannot prove an unlawful touching by Detective Bradds.

17

Section 1983 claims for false arrest, false imprisonment, and malicious prosecution, those claims are also considered under the scope of the Fourth Amendment. *See Gregg v. Richmond*, No. Civ. A. DKC 2001-1212, 2004 WL 257080, at *2 (D. Md. Feb. 11, 2004) (noting that false arrest, false imprisonment, and malicious prosecution claims arise from alleged violations of the Fourth Amendment); *White v. Md. Transp. Auth.*, 151 F. Supp. 2d 651, 655 (D. Md. 2001) (noting that Section 1983 claims for "false arrest, false imprisonment, and malicious prosecution, the dispositive question is probable cause."); *see Gregg*, 2004 WL 257080, at *2-4.

Plaintiff's Section 1983 claim based on a Fourteenth Amendment due process violation is equally lacking. As noted above, Article 24 of Maryland's Declaration of Rights is read *in pari materia* with the Fourteenth Amendment to the United States Constitution. This Court's analysis regarding Plaintiff's Article 24 claim therefore also applies to Plaintiff's Fourteenth amendment allegations. As a result, Detective Bradds's motion for summary judgment on Plaintiff's Section 1983 claim is granted.[13]

## IV. Conclusion

For the reasons set forth above, Detective Bradds's Motion for Summary Judgment is granted. A separate Order follows.

Dated: September 18, 2013

/s/
Stephanie A. Gallagher
United States Magistrate Judge

---

[13] Detective Bradds is also likely protected from Plaintiff's Section 1983 claims by the doctrine of qualified immunity. The "test of qualified immunity for executive officers is one of 'objective legal reasonableness'— whether an official acting under the circumstances at issue reasonably could have believed that his action did not violate the constitutional rights asserted." *Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988). Despite the poorly worded Application, Detective Bradds reasonably could have believed that obtaining a warrant for Plaintiff's arrest was reasonable, and not violative of Plaintiff's rights in any way, because she in fact had probable cause for his arrest. *See id.* (stating that for a warrantless arrest by a police officer, "the test is whether a police officer acting under the circumstances at issue reasonably could have believed that he had probable cause to arrest.").